09-3029-cv
E*TRADE Fin. Corp. v. Deutsche Bank AG

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 30th day of March, two thousand ten.

PRESENT:  REENA RAGGI,
            PETER W. HALL,
                        *Circuit Judges*,
            GREGORY W. CARMAN,
                        *Judge*.*

----------------------------------------------------------------------------

E*TRADE FINANCIAL CORPORATION and
E*TRADE BANK, a Federally Chartered Savings
Bank,

                        *Plaintiffs-Appellees*,

                v.                                          No. 09-3029-cv

DEUTSCHE BANK AG,

                        *Defendant-Appellant.*

----------------------------------------------------------------------------

APPEARING FOR APPELLANT:     SCOTT D. MUSOFF (Jeremy A. Berman, Jason C. Vigna, Christos Ravanides, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York.

---

* Judge Gregory W. Carman of the United States Court of International Trade, sitting by designation.

APPEARING FOR APPELLEES:  DOUGLAS P. LOBEL (David A. Vogel, Robert T. Cahill, *on the brief*), Cooley Godward Kronish LLP, Reston, Virginia.

Appeal from the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the corrected judgment entered on July 2, 2009, and the order entered on February 5, 2010, are AFFIRMED.

Plaintiffs E*TRADE Financial Corporation and E*TRADE Bank (collectively, "E*TRADE") sued defendant Deutsche Bank AG for breach of a stock purchase agreement ("SPA"), by which E*TRADE acquired the Deutsche Recreational Asset Funding Corporation ("DRAFCO"). Deutsche Bank now appeals from a $17,490,924.85 judgment entered in E*TRADE's favor after a thirteen-day bench trial. We review the district court's factual findings for clear error and its conclusions of law, and mixed fact and law, de novo. See Skoros v. City of New York, 437 F.3d 1, 12 (2d Cir. 2006). When, as in this case, the relevant contract language is unambiguous, its meaning is a question of law for the court to decide. See JA Apparel Corp. v. Abboud, 568 F.3d 390, 397 (2d Cir. 2009). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Deutsche Bank Breached its Covenant in § 2.06

The SPA contained a covenant that Deutsche Bank would prepare a closing balance sheet "in accordance with U.S. GAAP [Generally Accepted Accounting Principles]." SPA § 2.06(a). Based on extensive factual findings, the district court concluded that Deutsche Bank breached this covenant by (1) including (a) servicing fees and (b) liquidation expenses in its calculation of residual interest and gain on sale at the time of securitization but failing to deduct those expenses on DRAFCO's tax returns when they were actually paid, and (2) calculating the value of the deferred tax asset ("DTA") using a blended tax rate accounting for both federal and state taxes when it was not probable that DRAFCO would have state tax liability, thereby (3) causing the DTA on the closing balance sheet to be overstated by more than $11 million. As the district court found, Deutsche Bank's own accountant effectively acknowledged the inadequacy of these numbers by later referring to the DTA audit as "garbage in, garbage out." E*TRADE Fin. Corp. v. Deutsche Bank AG, 631 F. Supp. 2d 313, 364 (S.D.N.Y. 2009).

On appeal, Deutsche Bank does not challenge the district court's finding that the DTA was overstated. Rather, it submits that its failure properly to account for the DTA is essentially a dispute regarding an "amount[] reflected on the Closing Balance Sheet," which may only be resolved through a post-closing purchase price adjustment process. SPA § 2.06(b)(ii). According to Deutsche Bank, the district court impermissibly disturbed the "final, binding and conclusive" closing balance sheet, id., by concluding that E*TRADE's

3

breach of contract claim was instead amenable to the indemnity provisions in SPA §§ 9.01 and 9.02. We are not persuaded.

As in Westmoreland Coal Co. v. Entech, Inc.,100 N.Y.2d 352, 358, 763 N.Y.S.2d 525, 528 (2003), E*TRADE's "objections related to accounting conventions, estimates, [and] assumptions . . . unambiguously fall within the Agreement's indemnification provisions, not its purchase price adjustment provisions." Deutsche Bank's efforts to distinguish Westmoreland are unavailing. Like the contract in Westmoreland, the SPA provides that "[t]he sole and exclusive remedy for any breach of any representation, warranty, covenant or agreement shall be pursuant to Section 9.02," the SPA's indemnity provision. SPA § 9.01. That the parties in Westmoreland had not yet completed the purchase price adjustment process does not alter our conclusion. If E*TRADE's claims were not amenable to resolution by an independent accountant within thirty days of closing, as Westmoreland holds, then it follows that they are still not amenable to that process now.

Nor is Delta Holdings, Inc. v. National Distillers & Chemical Corp., 945 F.2d 1226 (2d Cir. 1991), to the contrary. There, the court suggested that plaintiffs could challenge the accuracy of defendants' accounting and their compliance with GAAP, but not underlying, GAAP-compliant estimates that proved incorrect in the future. See id. at 1246-49. Here, however, E*TRADE does not seek to shift the risk of future loss to Deutsche Bank, but simply to enforce Deutsche Bank's promise of "accounting accuracy and regularity." Id. at 1248.

4

We recognize that some district courts in this circuit have suggested that disputes regarding accounting methods should be resolved by purchase price adjustment procedures. See Talegen Holdings, Inc. v. Fremont Gen. Corp., No. 98 Civ. 0366, 1998 WL 513066, at *6 (S.D.N.Y. Aug. 19, 1998); Advanstar Commc'ns Inc. v. Beckley-Cardy, Inc., No. 93 Civ. 4230, 1994 WL 176981, at *3 (S.D.N.Y. May 6, 1994); Gestetner Holdings, PLC v. Nashua Corp., 784 F. Supp. 78, 81 (S.D.N.Y. 1992). Like the district court, we conclude that these cases are distinguishable. We "merely construe[] the agreement before [the court] and [do] not prohibit sophisticated business parties from agreeing to varying means of resolving disputes over adjustments to purchase price." Violin Entm't Acquisition Co. v. Virgin Entm't Holdings, Inc., 59 A.D.3d 171, 172, 871 N.Y.S.2d 613, 613-14 (1st Dep't 2009) (internal quotation marks omitted).

Finally, we need not address the parties' arguments regarding the breach of warranties contained in §§ 3.06, 3.07, and 3.14. Because we conclude that E*TRADE may recover, via §§ 9.01 and 9.02, the full amount by which it overpaid for DRAFCO under § 2.06, any error made by the district court in construing these other provisions would, in any event, be harmless.

2.      E*TRADE Is Entitled to Damages for its Overpayment for DRAFCO

As a direct result of Deutsche Bank's breach, E*TRADE Bank suffered damages of $11,566,838, the amount by which the DTA was overstated. Although the subsequent sale of DRAFCO to E*TRADE Financial may have compensated E*TRADE Bank, cf. Ostano

5

Commerzanstalt v. Telewide Sys., Inc., 794 F.2d 763, 766 (2d Cir. 1986) (noting that party "suffered no out-of-pocket loss" when it sold purchase induced by fraud for more than it paid), we cannot ignore, as Deutsche Bank urges, that E*TRADE Bank merely transferred the loss to its affiliate, E*TRADE Financial. Contemplating circumstances where the transaction causes damage to a related entity, the SPA plainly extends indemnity to "the Purchaser and its Affiliates." SPA § 9.02 (emphasis added). We therefore conclude that, under the SPA, E*TRADE Financial has standing to recover losses directly caused by Deutsche Bank's breach of its obligation to comply with GAAP.

Nor are we persuaded by Deutsche Bank's arguments as to the award. E*TRADE Financial's damages are not "merely speculative, possible or imaginary"; they are "reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131, 132 (1986) (citing Wakeman v. Wheeler & Wilson Mfg. Co., 101 N.Y. 205, 209 (1886)). Nor is E*TRADE Financial's loss offset either by tax refunds that it could seek for DRAFCO's overstatement of taxable income in past years (as the district court observed, under §§ 7.01 and 7.02 of the SPA, those refunds would be due only to Deutsche Bank) or by E*TRADE Financial's write-down of the DTA and corresponding increase in goodwill.

Finally, because we conclude simply that E*TRADE Financial may recover the full amount of overpayment for DRAFCO as an "Affiliate" under § 9.02, we need not address

6

Deutsche Bank's argument that E*TRADE failed to prove any actual tax losses supporting the district court's damages award.

### 3. Prejudgment Interest

Deutsche Bank submits that the district court erred in computing prejudgment interest at the New York statutory rate, see N.Y. C.P.L.R. § 5004, rather than at LIBOR.[1] We disagree. Under New York law, the district court was required to award prejudgment interest at the statutory rate, see Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991), unless the parties contracted for a different rate, see O'Brien v. Young, 95 N.Y. 428, 432-33 (1884); NYCTL 1998-2 Trust v. Wagner, 61 A.D.3d 728, 729, 876 N.Y.S.2d 522, 523 (2d Dep't 2009). Like the district court, we conclude that § 2.06(d) provides that only payments made "pursuant to Section 2.06(c) shall bear interest . . . at the LIBOR Rate." Section 2.06(c) mandates payments for the difference between tangible stockholder's equity recorded on the reference and closing balance sheets. The district court's damages award was not such a payment, but rather an indemnity under §§ 9.01 and 9.02 for Deutsche Bank's breach of its promise to comply with GAAP. That the amount of E*TRADE's injured expectation was also the amount by which it "overpaid" for DRAFCO does not transform this indemnity into a post-closing purchase price adjustment mandated by § 2.06(c). Accordingly, the district court correctly awarded prejudgment interest at the statutory rate, see O'Brien v. Young, 95

---

[1] LIBOR stands for the London inter-bank offered rate. Here, the parties defined LIBOR in § 1.01 of the SPA. **[A 1176-77]**

N.Y. at 432-33, accruing from the date of the sale of DRAFCO stock on October 20, 2003, see Reno v. Bull, 226 N.Y. 546, 552-53 (1919).

    4.    Attorneys' Fees

Deutsche Bank finally challenges the district court's award of attorneys' fees. "Under the American Rule, it is well established that attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co. ("Braspetro"), 369 F.3d 34, 74 (2d Cir. 2004) (internal quotation marks and alterations omitted)). A "court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 367 (1989); accord Coastal Power Int'l, Ltd. v. Transcon. Capital Corp., 182 F.3d 163, 165 (2d Cir. 1999).

Applying these standards, we conclude that the parties' intention to indemnify attorneys' fees is unmistakably clear from language stating that E*TRADE "shall be indemnified and held harmless by the Seller from and against all liabilities, costs or expenses (including, without limitation, reasonable attorneys' fees)." SPA § 9.02 (emphasis added). Deutsche Bank's argument that this language applies only to third-party claims is unavailing because the SPA makes § 9.02 the "sole and exclusive remedy for any breach of any representation, warranty, covenant or agreement," id. § 9.01, including disputes between the parties. Further, the SPA has a separate indemnity provision for third-party claims.

8

The cases cited by Deutsche Bank are not to the contrary.  For example, in <u>Braspetro</u>, we concluded that a contract providing for "legal costs" was not "unmistakably clear."  369 F.3d at 75-78; <u>see also</u> <u>Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.</u>, No. 08 Civ. 1558, 2009 WL 577916, at *10 (S.D.N.Y. Mar. 2, 2009) (concluding that contract "does not contain 'unmistakably clear' language of an intent to indemnify attorneys' fees" when it "does [not] mention attorneys' fees" (internal quotation marks omitted)).  Here, however, the SPA plainly provides for "attorneys' fees."

Finally, to the extent Deutsche Bank challenges the amount of attorneys' fees awarded, "a district court has broad discretion in awarding attorneys' fees, and an award of such fees may be set aside only for abuse of discretion."  <u>McGuire v. Russell Miller, Inc.</u>, 1 F.3d 1306, 1313 (2d Cir. 1993).  We identify no abuse of discretion in the district court's thoughtful and comprehensive fees decision.

We have considered Deutsche Bank's remaining arguments on appeal and conclude that they are without merit.  Accordingly, we AFFIRM the district court's July 2, 2009 corrected judgment and February 5, 2010 order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court