**UNDERDOG TRUCKING, L.L.C., and Reggie Anders, Plaintiffs,**

v.

**VERIZON SERVICES CORPORATION, et al., Defendants.**

No. 09 Civ. 8918(DLC)(JLC).

United States District Court, S.D. New York.

July 14, 2011.

Lishomwa Damian Henry, Lishomwa Henry, Attorney–At–Law, Philadelphia, PA, for Plaintiffs.

Raymond G. McGuire, Kristina Cunard Hammond, Kauff McGuire & Margolis LLP, New York, NY, for Defendants.

### MEMORANDUM AND ORDER

JAMES L. COTT, United States Magistrate Judge.

By Memorandum and Order dated March 7, 2011, I granted the application by Defendants Verizon Services Corp. and Verizon Communications Inc. for attorney's fees and costs in connection with Defendants' motion to compel discovery. On March 21, 2011, at the direction of the Court, Defendants filed an affirmation in support of their reasonable expenses, including attorney's fees. Plaintiffs Underdog Trucking, L.L.C. and Reggie Anders filed a response on March 31, 2011. For the reasons stated below, I hereby award Defendants reasonable attorney's fees and costs in the amount of $13,865.97.

### I. BACKGROUND

The facts giving rise to the motion to compel have been described at length in the Court's Memorandum and Order granting Defendants' application for reasonable expenses, familiarity with which is assumed. (Memorandum and Order dated March 7, 2011 ("Order") (Dkt. No. 72)). In December 2009, Plaintiffs Underdog Trucking, L.L.C. ("Underdog") and Reggie Anders (together, "Plaintiffs") commenced this action against Defendants Verizon Services Corp. and Verizon Communications Inc. (together, "Defendants"), asserting claims of race discrimination and breach of contract. (See Petition for Damages filed October 21, 2009 and Amended Petition for Damages filed April 23, 2010 ("Pet.") (Dkt. Nos. 1, 23)). Defendants served Plaintiffs with document requests on April 2, 2010, after which the parties communicated at length regarding deficiencies in Plaintiffs' responses. (Declaration of Kristina C. Hammond dated December 3, ("Hammond Decl."), Exs. 1–8, 11–12 (Dkt. No. 61)). Following a pre-motion conference with the Court, Defendants filed a motion to compel on December 3, 2010, seeking production of Plaintiffs' tax returns, IRS Form 1099s issued to Plaintiffs and to independent contractors, income documents received by Plaintiffs from other customers, and documents concerning equipment purchased by Plaintiffs. (Dkt. Nos. 59, 60, 61). On December 23, Plaintiffs produced nearly 200 pages of documents, all of which were responsive to Defendants' April 2 document requests. (Declaration of Eduardo Diaz dated December 27, 2010, Ex. 21 (Dkt. No. 68)). In light of this production, Defendants agreed to withdraw the portion of their motion compelling discovery, but continued to seek fees and costs incurred in making the motion. (Letter from

Raymond G. McGuire dated January 7, 2011 ("McGuire Jan. 7, 2011 Letter") at 1).

On March 7, 2011, I granted Defendants' application for reasonable expenses as a sanction for Plaintiffs' discovery conduct. (Dkt. No. 72). To determine the appropriate sanction amount, I directed Defendants to file an affidavit of their reasonable expenses, and Plaintiffs to file a response. (Order at 14). On March 21, 2011, Defendants filed an affirmation, including billing records, which identified fees and costs in connection with the motion to compel. (*See* Affirmation of Raymond G. McGuire in Support of Motion for Fees and Costs filed March 21, ("Affirmation") (Dkt. No. 73)). On March 31, 2011,

Plaintiffs filed a response, along with the Declaration of Kezia Lasha, who is described as the "office manager" for Underdog Trucking. (*See* Plaintiffs' Response ("Pl. Response") and Declaration of Kezia Lasha ("Lasha Decl.") (Dkt. No. 75)).[1]

## II. *DISCUSSION*

Having decided that Defendants are entitled to recover reasonable attorney's fees and costs incurred in making the motion to compel, the Court must now determine the amount to award. Defendants seek $17,223.40 in attorney's fees and $824.00 in costs, for a total award of $18,047.40, broken down as follows:

| | | | |
|---|---|---|---|
| Raymond G. McGuire: | $550/hour | 3.8 hours | $ 2,090.00 |
| Kristina C. Hammond: | $221/hour | 9.3 hours | $ 2,055.30 |
| Daniel M. Murdock: | $208.25/hour | 62.8 hours | $13,078.10 |
| Costs: | | | $ 824.00 |
| Total: | | | $18.047.40 |

### A. Attorney's Fees

District courts have broad discretion to determine a fee award based on the circumstances of a case. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *E\*Trade Fin. Corp. v. Deutsche Bank AG*, 374 Fed.Appx. 119, 124 (2d Cir.2010). The traditional starting point for determining a reasonable attorney's fee award is the "lodestar" amount, which results in a presumptively reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, — U.S. —, 130 S.Ct. 1662, 1672–73, 176 L.Ed.2d 494 (2010); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 188–90 (2d Cir.2008); *see also, e.g., Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78, 83 (S.D.N.Y.1994) (applying lodestar method to determine attorney's fees for Rule 37 motion to compel). The lodestar amount is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. *See Arbor Hill*, 522 F.3d at 186 (citing *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir.1973)).

### 1. Reasonable Hourly Rate

A reasonable hourly rate is the rate a "paying client would be willing to pay," bearing in mind that a "reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. A court uses the "hourly rates employed in the district in which the reviewing court sits," which in this case is the Southern District of New York. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987) (citation omitted). Hourly rates should be "current rather than historic." *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir.2006) (citation and quotation marks omitted). The Second Circuit has held that in determining the reasonable hourly rate, district courts should also assess case-specific considerations, including the factors articulated by the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).[2] *See Arbor Hill*, 522 F.3d at 186–90.

---

**1.** Counsel who filed Plaintiffs' response, Eduardo Diaz, Esq., has since been discharged by Plaintiffs (*See* Order dated April 14, 2011 (Dkt. No. 80)).

**2.** The twelve *Johnson* factors are; (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the pre-

In a recent decision, however, the Supreme Court approved the objective lodestar approach over the discretionary case-specific *Johnson* factors, reasoning that the lodestar figure " 'includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee.' " *Perdue*, 130 S.Ct. at 1673 (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)).[3] The Supreme Court advised that the *Johnson* factors could be applied in rare circumstances where the lodestar amount does not adequately account for a given factor. *See Perdue*, 130 S.Ct. at 1673. Notwithstanding *Perdue*, however, the Second Circuit continues to apply the lodestar approach and the *Johnson* factors in equal force to determine a presumptively reasonable fee. *See, e.g., Konits v. Karahalis*, 409 Fed.Appx. 418, 422 (2d Cir.2011) (summary order); *Green v. City of New York*, 403 Fed.Appx. 626, 629 (2d Cir.2010) (summary order).[4]

Defendants have retained Kauff McGuire & Margolis LLP ("Kauff McGuire"), a law firm specializing in labor and employment law, to represent them in this action. Defendants' affirmation includes billing rates for three attorneys who worked on the motion to compel and related tasks: $550 for partner Raymond G. McGuire, $221 for associate Kristina C. Hammond, and $208.25 for associate Daniel M. Murdock. (Affirmation ¶ 17). Mr. McGuire graduated from law school in 1964 and practices in the areas of employment, discrimination, contract, and labor relations. Mr. McGuire has tried numerous cases in state and federal courts in the New York metropolitan area, served as a professor of law at the University of Maine School of Law, and lectured on labor and employment law at two other law schools. He joined Kauff McGuire as a named partner in 1981 and has primary responsibility for the firm's litigation practice in federal and state courts, and federal agencies. (Affirmation ¶¶ 6, 7, 8). Ms. Hammond graduated from law school in 2006 and has worked on employment-related matters since that time. (Affirmation ¶¶ 10, 11, 12). Mr. Murdock graduated from law school in 2009 and joined the firm in 2010. (Affirmation ¶¶ 13, 14).

Plaintiffs assert that Defendants' counsel have not established the reasonableness of their rates. (Pl. Response ¶ 19). However, Plaintiffs have not articulated any specific reasons or cited to any case law demonstrating that the requested rates are not "in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Defendants' requested billing rates are in fact within the range of rates charged by lawyers in the Southern District "of reasonably comparable skill, experience and reputation." *Id.; see, e.g., Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 5724(PGG), 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (citations omitted) (rates awarded in the past ten years range from $250 to $600 for experienced civil rights attorneys, and $200 to $250 for associates, with average awards increasing over time). Mr. McGuire's hourly rate is reasonable given his position, and his extensive experience in labor, employment, and contract law. *See, e.g., Taaffe v. Life Ins. Co. of N. Am.*, 769 F.Supp.2d 530, 542–44 (S.D.N.Y.2011) (approving rate of $560 for named partner at law firm who graduated in 1983 and specialized in ERISA litigation

---

clusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717–19.

**3.** *Perdue* involved circumstances in which a party sought an upward enhancement of attorney's fees based on outside considerations. Nonetheless, the Supreme Court's "endorsement of the lodestar approach as the primary method for determining attorney's fees applies." *Shepherd v. Law Offices of Cohen & Slamowitz, LLP*, No. 08 Civ. 6199(CM)(LMS), 2010 WL 4922314, at *2 n. 4 (S.D.N.Y. Nov. 29, 2010).

**4.** The Court has located only one Second Circuit decision citing *Perdue* and in that case, *Lobur v. Parker*, 378 Fed.Appx. 63 (2d Cir.2010) (summary order), the Circuit did not discuss *Perdue* in any detail.

since 1994); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F.Supp.2d 507, 513–15 (S.D.N.Y. 2010) (reasonable hourly rate in civil rights case is $550 for labor and employment partner with 36 years experience). Ms. Hammond and Mr. Murdock's hourly rates are also reasonable given the number of years that they have been practicing law. *See, e.g., Becerril v. East Bronx NAACP Child Dev. Ctr.*, No. 08 Civ. 10283(PAC)(KNF), 2009 WL 2611950, at *8 (S.D.N.Y. Aug. 18, 2009) (reasonable hourly rate is $250 for associates with two to four years of legal experience).

The Court also concludes that the requested rates are reasonable in light of the case-specific *Johnson* factors. Specifically, Defendants' rates are reasonable considering the nature the lawsuit, Kauff McGuire's customary hourly rate, the amount involved in the case and the results obtained, and the length of the professional relationship between Kauff McGuire and the Verizon entities. Plaintiffs' lawsuit, which includes claims of race discrimination and breach of a contract for trucking services between Underdog and Verizon Services Corporation, raises some issues of a "complicated nature," as the District Judge to whom this case is assigned recently observed. (*See* Memorandum Opinion and Order dated July 6, 2011 (Dkt. No. 101 at 5–6)). Plaintiffs have, moreover, alleged significant economic damages, including annual revenue losses of $1,000,000, damage to Plaintiffs' credit rating, and loss of business opportunity. (Pet. ¶¶ 99, 102). Kauff McGuire, which has represented Verizon entities since 1996, has discounted its hourly rates for Defendants in this lawsuit.[5] (Affirmation ¶¶ 9, 20–22). The 15 year relationship between Mr. McGuire and Verizon suggests that Verizon is satisfied with the quality of Kauff McGuire's representation, and that it finds the firm's rates reasonable. Given these case-specific considerations, and since Defendants' requested rates are in line with the prevailing rates in the Southern District of New York, the Court finds that Defendants' hourly rates—$550 per hour for Mr. McGuire, $221 per hour for Ms. Hammond, and $208.25 per hour for Mr. Murdock—are reasonable.

### 2. Hours Reasonably Expended

After determining the appropriate hourly billing rate, the court calculates the hours reasonably expended. *See Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir.1998). The court examines contemporaneous time records that identify, for each attorney, the hours expended on a task, "with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997); *see Scott v. City of New York*, 643 F.3d 56, 57–58 (2d Cir.2011); *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983). The court may also rely on its own experience with the case, as well as its experiences with similar submissions and arguments. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir.1992). *But see Scott*, 643 F.3d at 58 ("award based entirely on the district court judge's personal observation and opinions of the applying attorney . . . is contrary to *Carey*"). In reducing the lodestar amount, the court subtracts any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. For example, the court can make reductions where the stated number of hours is greater than what should have been required for the work produced. *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir.2002); *Nat'l Audubon Soc., Inc. v. Sonopia Corp.*, No. 09 Civ. 975(PGG)(FM), 2010 WL 3911261, at *5 (S.D.N.Y. Sept. 1, 2010). In addition to excluding excessive hours, courts can reduce a fee award by making an across-the-board percentage cut in the number of hours. *Green v. City of New York*, 403 Fed. Appx. 626, 630 (2d Cir.2010) (summary order); *see, e.g., Simmonds v. N.Y.C. Dept. of Corr.*, No. 06 Civ. 5298(NRB), 2008 WL 4303474, at *7–8 (S.D.N.Y. Sept. 16, 2008) (ordering 40% reduction where attorneys spent excessive number of hours drafting complaint, drafting and reviewing correspon-

---

**5.** Defendants state that their rates in this case reflect a 35% discount to Mr. McGuire's standard rate of $750 per hour, a 30% discount to Ms. Hammond's standard rate of $325 per hour, and a 17% discount to Mr. Murdock's standard billing rate of $245 per hour. (Affirmation ¶¶ 20–22)

dence, preparing document requests, and preparing research memorandum).

In support of their application, Defendants have submitted a Chart of Fees and Costs (the "Chart") that includes contemporaneous time records for the motion to compel and related tasks. (*See* Affirmation, Ex. A). Defendants' Affirmation and Chart reflect a total of 75.9 billable hours spent completing a number of projects. In addition to drafting and filing their December 3, 2010 motion, Defendants also reviewed documents produced by Plaintiffs after the motion was filed, reviewed Plaintiffs' opposition brief, prepared the withdrawal of their motion, drafted an unfiled reply brief, prepared related correspondence, and drafted the fee application. (Affirmation ¶ 27). With the exception of the fee application, for which Defendants have specifically claimed 15.7 hours of work, Defendants have not provided an exact tally of hours for each task. (Affirmation ¶ 28). However, since the billing descriptions are fairly clear, the Court is able to aggregate the hours for related entries and, as discussed below, can approximate what proportion of the 75.9 hours was expended for each task in connection with the motion to compel.

### a. Defendants' Motion to Compel

 Plaintiffs contend generally that Defendants' stated hours should be rejected by the Court because they are "excessive, redundant and unnecessary" and "generated for the sole purpose of running up oppression of Plaintiffs." (Pl. Response ¶ 16). Plaintiffs' only specific arguments relate to Defendants' hours in connection with drafting the motion to compel and supporting papers. (Pl. Response ¶¶ 13–15, 19). By the Court's calculation, between November 19 and December 3, 2010, Defendants spent approximately 33 hours preparing, drafting, and filing the motion to compel and supporting papers. The requested hours for this time period are as follows:

| | | |
|---|---|---|
| Raymond G. McGuire: | 2.1 hours | $1,155.00 |
| Kristina C. Hammond: | 4.1 hours | $ 906.10 |
| Daniel M. Murdock: | 26.8 hours | $5,581.10 |
| | | |
| Total: | 33 hours | $7,642.20 |

Plaintiffs argue that "[e]ven on significant issues, Motion [sic] to Compel should not require more than five hours of research and drafting let alone for the plain-vanilla production we have at issue in this matter." (Pl. Response ¶ 15). Having carefully reviewed the billing descriptions, and based upon my familiarity with this matter, I find that the number of hours expended by Defendants on the motion to compel is excessive. Defendants' moving papers consisted of a 14 page brief, six page declaration, and 16 exhibits, which included Defendants' document requests, correspondence between the parties, and transmission e-mails for Plaintiffs' document productions. (Dkt. Nos. 60, 61). Defendants' brief and declaration need not have taken 33 hours to prepare and file. The brief asserts straightforward legal arguments and cites to just three cases. Courts have reduced the number of hours expended on such motions that do not require complex legal analysis. *See, e.g., Rich Prods. Corp. v. Impress Indus.*, No. 05 Civ. 187S, 2008 WL 203020, at *3 (W.D.N.Y. Jan. 23, 2008) (reducing claim for 7.6 hours for simple motion to compel to 3 hours); *Marano v. Aaboe*, No. 05 Civ. 9375(BSJ)(RLE), 2007 WL 3195156, at *4 (S.D.N.Y. Oct. 29, 2007) (reducing claim from 16 hours to 3 hours for motion to compel without complex legal analysis). Similarly, Ms. Hammond's declaration did not require considerable time and effort. There is no reason to believe that the exhibits to the declaration were not readily available to Defendants, and thus should not have taken very much time to compile. Moreover, the task of assembling exhibits is clerical in nature and should have been completed by administrative staff, whose billable time is noticeably absent from Defendants' Chart. *See, e.g., Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01 Civ. 201S(F), 2011 WL 1598973, at *6 (W.D.N.Y. Apr. 27, 2011) (applying 15% reduction to account for duplication of efforts, vagueness in billing entry descriptions, and absence of support staff to perform clerical work).

A review of Defendants' records also indicates that a portion of Ms. Hammond's work with respect to drafting and revising the motion was duplicative of Mr. Murdock's initial efforts. Based on the billing entries, both attorneys appear to have spent time

preparing and drafting the brief and declaration. (Chart at 1). Given the relative simplicity of the motion, such duplicative work was unnecessary, and the hours claimed are therefore excessive, Mr. McGuire's hours were similarly excessive. A partner of Mr. McGuire's expertise should not require 2.1 hours to review a straightforward motion to compel, especially where his junior associate has spent 20 hours on preparation and drafting. (*Id.*).

At the same time, I decline to adopt Plaintiffs' proposal of five hours, as Plaintiffs bear some responsibility for protracting the discovery dispute prior to the motion. Plaintiffs' delay likely required Defendants to spend additional time drafting and also generated the record of correspondence that Defendants submitted in support of their motion. *See, e.g., Landmark Chems., SA. v. Merrill Lynch & Co.,* 234 F.R.D. 62, 64 (S.D.N.Y.2005) (plaintiff bears some responsibility for protracting proceedings, justifying reasonableness of hours expended). Since the Court is unable to exclude specific entries for this portion of the fee award, I find that a 40% reduction is appropriate for the number of hours spent by Defendants on preparing, drafting, and filing the December 3, 2010 motion to compel, resulting in approximately 20 hours. *See, e.g., Banco Cent. Del Para. v. Para. Humanitarian Found., Inc.,* No. 01 Civ. 9649(JFK), 2007 WL 747814, at *2–3 (S.D.N.Y. Mar. 12, 2007) (finding reasonable 21 hours expended by three attorneys on motion to compel discovery and impose sanctions). Accordingly, Mr. McGuire's total hours are reduced by 0.84 hours ($462.00), Ms. Hammond's hours are reduced by 1.64 hours ($362.44), and Mr. Murdock's hours are reduced by 10.72 hours ($2,232.44).

### b. Defendants' Reply

■ Under the circumstances in this case, I also find that Defendants' hours in connection with drafting a reply brief are excessive. By the Court's calculation, Defendants spent approximately 14 hours preparing, drafting,

and revising their reply to Plaintiffs' opposition. After Defendants filed their motion to compel on December 3, 2010, Plaintiffs produced nearly 200 pages of documents on December 23, intending "to resolve the issues presented in the motion to compel." (Declaration in Opposition of Defendants' Motion to Compel and for Other Costs and Sanctions of Eduardo Diaz, dated December 27, 2010, Ex. 21 (Dkt. No. 68)). Plaintiffs' document production also contained a request for Defendants to withdraw their motion. On December 24, Defendants rejected that request, stating that they needed additional time to review the newly-produced documents. (*Id.* at 4).

About two weeks later, after reviewing the documents, Defendants advised the Court on January 7, 2011 that they would withdraw the portion of the motion compelling discovery, but would continue to seek fees and costs incurred in making the motion. (McGuire January 7 Letter at 1). During that two week period, Defendants' attorneys billed approximately 14 hours for the "preparation of [a] reply brief to Plaintiffs' motion to compel" and "research and drafting of [the] same." (Chart at 2). Specifically, Mr. Murdock spent 10.8 hours preparing the reply brief—6.8 hours on January 4, 1.5 hours on January 6, and 2.5 hours on January 7. (*Id.* at 1–2).[6] Ms. Hammond spent 1.1 hours on January 4, 0.2 hours on January 6, and 1.8 hours on January 7. (*Id.* at 2).

In light of Defendants' ultimate decision to withdraw their motion and abandon the filing of any reply, and given the straightforward nature of any potential reply, I find that these hours are excessive. The Court recognizes that the reasonableness of Defendants' hours should depend not on hindsight, but on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted). A reasonable attor-

---

6. Mr. Murdock also spent 0.5 hours on January 4 participating in a telephone conference with a Certified Public Accountant to discuss irregularities in tax returns produced by Plaintiffs. (Chart at 1). The Court has not included these 0.5 hours in the total number of hours Mr. Murdock spent drafting Defendants' reply brief. Although the conference was held "in preparation" of the reply, the Court finds that the expense is more closely related to Defendants' ongoing review of Plaintiffs' documents, for which Defendants should be reimbursed. (*Id.*)

ney would likely have simultaneously prepared a reply and considered withdrawal in light of an adversary's apparent compliance with a motion to compel. Such a strategy is prudent, even if the lawyers ultimately decide against filing the reply. *See, e.g., Diplomatic Man, Inc. v. Nike, Inc.,* No. 08 Civ. 139(GEL), 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009) (fees reasonable for work prepared but ultimately abandoned where plaintiff's blatant disregard of discovery process caused defendant to spend additional time and money on discovery)

Nonetheless, I find that the hours expended by Defendants are excessive. A thorough reply to Plaintiffs' six page opposition brief, whose absence of any case law citations obviated any need for additional legal research, need not have taken approximately 14 hours. *See, e.g., Rich Prods. Corp.,* 2008 WL 203020, at *3 (reducing claim from 13.8 hours to 9 hours for work on reply in support of motion to compel). In addition, as Defendants inched closer towards deciding to withdraw the motion, Mr. Murdock's preparatory work became unnecessary, including his 2.5 hours of work on the very same day that Defendants advised the Court that they would withdraw the motion to compel. (Chart at 2). Accordingly, Mr. Murdock's hours expended with respect to preparing a draft reply brief are reduced by 50% (5.4 hours), or $1,124.55.[7]

#### c. Remaining Records

■ In reviewing Defendants' remaining records, I find that the hours expended in connection with document review, internal discussions, correspondence with Plaintiffs and the Court, and the fee application are reasonable. In light of the reductions made for excessive hours, the presumptively reasonable attorney's fee is $13,041.97.

### 3. Reduction of Fees

■ Upon determining a presumptively reasonable fee, the Court then considers whether an adjustment of the fee is warranted considering the "financial disparities" between the parties. *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.,* No. 96 Civ. 4126(RWS), 2004 WL 728878, at *5 (S.D.N.Y. Apr. 6, 2004). " '[F]ee awards are at bottom an equitable matter, and courts should not hesitate to take the relative wealth of the parties into account.' " *Toliver v. Cnty. of Sullivan,* 957 F.2d 47, 49 (2d Cir.1992) (quoting *Faraci v. Hickey–Freeman,* 607 F.2d 1025, 1028 (2d Cir.1979)). The Court's decision to equitably reduce the presumptively reasonable fee is based on submitted evidence of financial disparities. *Compare Barclays Capital Inc. v. Theflyonthewall.com,* No. 06 Civ. 4908(DLC), 2010 WL 2640095, at *6–7 (S.D.N.Y. June 30, 2010) (awarding equitable reduction equivalent to one month of gross revenues, based on requesting party's cash on hand, outstanding liabilities, and monthly revenues and operating expenses), *and Shangold v. Walt Disney Co.,* No. 03 Civ. 9522(WHP), 2006 WL 2884925, at *1 (S.D.N.Y. Oct. 11, 2006) (awarding equitable reduction based on sworn financial statements of annual earnings and assets), *with Harrell v. Van der Plas,* No. 08 Civ. 8252(GEL), 2009 WL 3756327, at *7 (S.D.N.Y. Nov. 9, 2009) (equitable reduction not warranted where requesting party provided no reliable financial information apart from statements in affidavit).

■ Plaintiffs request a reduction of the fee award in light of Underdog's financial situation. In support of the request, Plaintiffs have submitted a declaration from Kezia Lasha, Underdog's "office manager." (Lasha Decl. ¶ 2). Ms. Lasha states that Underdog "has gone from being a multimillion dollar company to a one-truck operation" and that "its ability to pay any sanctions is nonexistent." (Lasha Decl. ¶¶ 8, 10). Ms. Lasha further contends that though Underdog is

---

7. Three entries appear for Ms. Hammond that mention work completed for Defendants' draft reply. (Chart at 2). The total for those entries is 3.1 hours, which the Court finds reasonable for two reasons. First, the billing entries indicate that most of Ms. Hammond's time on the reply was spent having discussions with her colleagues. Such discussions were appropriate, and therefore reimbursable, in light of Defendants' uncertain legal strategy prior to withdrawing the motion. Second, the entries also include Ms. Hammond's time spent on other tasks related to the motion to compel, including preparing correspondence. Ms. Hammond's hours on these tasks should be reimbursed in full.

insolvent and "its revenues are less than a tenth of what it. [sic] used to be," it has not filed for bankruptcy "due to the personal convictions and determination of its owners to avoid that stigma at all costs." (Lasha Decl. ¶¶ 11, 12). Underdog's owners, Ms. Lasha continues, are also financially unstable, in debt, and "face[ ] foreclosure and incessant collection activity."[8] (Lasha Decl. ¶ 13–15). Plaintiffs also cite "public policy" as a reason for reducing the fee award, reiterating statements regarding the "devastating effect" that an approximately $18,000 award would have on Plaintiffs. (Affirmation ¶ 23).

While there may well be a significant financial disparity between Plaintiffs and Defendants, Plaintiffs' response to Defendants' fee application does not shed light on their capacity to pay a sanction. As an initial matter, Plaintiffs' submission contains inconsistent statements regarding their ability to pay any amount to Defendants, Statements in Ms, Lasha's declaration and in Plaintiffs' response suggest that Underdog and its owners are unable to pay *any* fee award. (Lasha Decl. ¶¶ 10, 16; Pl. Response ¶ 21). Meanwhile, Plaintiffs' response also states that "[e]ven if . . . some attorneys['] fees are warranted, this Court should not impose a fee that would essentially cripple the Plaintiff and his company." (Pl. Response ¶ 23). These positions are inconsistent. Plaintiffs cannot be both unable to pay any sanction and yet be able to pay a reduced fee award that would not "cripple" Underdog.

Furthermore, the Court does not have the benefit of additional financial information to assess these positions and potentially apply an appropriate fee reduction. In fact, Plaintiffs' vague request is not supported by any evidentiary submission. In the absence of financial statements, revenue documents, or,

at the very least, basic figures about Underdog, the Court is left only with the office manager's declaration. Ms. Lasha's statements provide little guidance about what fee amount, if any, can be sustained by Underdog or its owners. While Ms. Lasha maintains that the company is insolvent, she stops short of saying that it has no revenue. (Lasha Decl. ¶ 11 ("revenues are less than a tenth of what [they] used to be")). Without concrete financial information, the Court will not engage in speculation as to a fee reduction that would both preserve Defendants' right to an award and recognize Plaintiffs' financial constraints.[9]

Without citing to authority, Plaintiffs also urge the Court to reduce Defendants' request in light of Plaintiffs' conduct during the discovery dispute. Specifically, Plaintiffs assert that they have been cooperating with Defendants regarding document discovery, that the missing documents did not prejudice Defendants in any way, and that Plaintiffs extended multiple unreturned courtesies to Defendants. (Pl. Response ¶¶ 5–8, 11–12, 17, 21–22). Plaintiffs further contend that Defendants failed to meet and confer prior to filing the motion, and that the whole dispute could have been resolved "months ago." (Pl. Response ¶¶ 4–11, 12, 19, 21–22). The Court considered, and rejected, these same arguments in deciding whether to impose sanctions on Plaintiffs. (Order at 8–13). Having decided that sanctions are appropriate in light of Plaintiffs' conduct, the Court is hard pressed to conclude at this juncture that Plaintiffs should be rewarded with a reduced sanction for that very same conduct. Moreover, while the Court is keenly aware that Plaintiffs may face a financial hardship in satisfying this award, the "failure to provide adequate and reliable financial information prevents the Court from exercising its dis-

---

8. Though Ms. Lasha refers to "Underdog's owners," Plaintiffs' Amended Petition for Damages refers to Reggie Anders as "*the* owner of Underdog Trucking." (Pet. ¶ 6) (emphasis added). It is unclear, therefore, whether there are additional owners of Underdog, further complicating Plaintiffs' financial picture and alleged inability to pay a fee award.

9. In its Memorandum and Order granting Defendants' application for fees and costs, the Court

stated that "Plaintiffs have not submitted any sworn testimony from any Underdog principal setting out how the imposition of costs here would harm the business." (Order at 13 n. 6). In light of the Court's prior statement, Plaintiffs' vague and unsupported assertions of financial instability, sworn to by Underdog's "office manager," fall far short of an evidentiary submission sufficient to justify a fee reduction

cretion to reduce the presumptively reasonable fee award." *Harrell*, 2009 WL 3756327, at *7.

The Court therefore approves an attorney's fee award of $13,041.97, which accounts for reduced hours in connection with Defendants' motion to compel and reply brief.

| | | |
|---|---|---|
| Raymond G. McGuire: | 2.96 hours | $ 1,628.00 |
| Kristina C. Hammond: | 7.66 hours | $ 1,692.86 |
| Daniel M. Murdock: | 46.68 hours | $ 9,721.11 |
| | | |
| Total: | 57.3 hours | $13,041.97 |

## B. Costs

 Defendants seek reimbursement of $824.00 for the review of Plaintiffs' tax returns by a Certified Public Accountant. (Affirmation ¶ 30). In support of their request, Defendants have submitted an invoice from J.H. Cohn LLP which includes an $824 charge for services performed in connection with the review of Plaintiffs' tax returns. (*See* Affirmation, Exhibit B). These costs are reasonable, well-documented, and would ordinarily have been charged to the client. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998). Accordingly, Defendants' request for costs is granted in full.

## III. *CONCLUSION*

For the reasons set for above, Defendants are awarded $13,041.97 in fees and $824.00 in costs for a total award of $13,865.97.

**SO ORDERED.**